**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF GEORGIA**
**STATESBORO DIVISION**

| | | |
|---|---|---|
| PAMELA SWAIN, and<br>THE ESTATE OF<br>BRENDA SWAIN,<br><br>Plaintiffs,<br><br>v.<br><br>NEWREZ, LLC d/b/a<br>SHELLPOINT MORTGAGE<br>SERVICING,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | <br><br><br><br><br><br>CV625-053 |

**ORDER AND REPORT AND RECOMMENDATION**

*Pro se* plaintiff Pamela Swain is a familiar litigant in this Court. *See Swain v. Colorado Tech. Univ.*, 4:14-cv-071, doc. 1 (S.D. Ga. Apr. 4, 2014); *Swain v. Stewart*, 6:19-cv-003, doc. 1 (S.D. Ga. Jan. 11, 2019); *Swain v. Weinstein*, 6:20-cv-082, doc. 1 (S.D. Ga. Sept. 1, 2020). Defendant NewRez, LLC removed this case from the Superior Court of Tattnall County, Georgia. Doc. 1. Swain filed multiple amended complaints. *See* docs. 7 & 8. Defendant moved to dismiss. Doc. 9. Chief Judge Baker stayed the deadlines and directed Plaintiffs to respond to the Motion to Dismiss. Doc. 10. Swain then filed several more amended

complaints. Docs. 13, 16 & 17. Finally, she has filed multiple requests for "hearings," discussed below. *See* docs. 19, 20, 21, 22, 23, 26, 28, 29, 31 & 32. Finally, she has filed motions for preliminary injunctive relief and to "reopen" discovery. Docs. 25 & 36. Because Swain has disregarded the Court's orders, her operative Complaint fails to state any claim upon which relief can be granted, and many of her filings are facially frivolous, Defendant's Motion to Dismiss should be **GRANTED**, doc. 9, and this case should be **DISMISSED**.

After Defendant removed this case, it moved to dismiss Plaintiffs' Complaint. Doc. 5. Plaintiff then filed an Amended Complaint, doc. 7, and a Second Amended Complaint, doc. 8. Defendants filed a Motion to Dismiss addressing both pleadings, but noted the first Amended Complaint did not assert any discernable claim. Doc. 9. The District Judge entered an Order clarifying that the Second Amended Complaint, doc. 8, is the operative pleading in this case and forbidding further amendment without leave of court. Doc. 10 at 1. The Order also held that any claims not asserted in the Second Amended Complaint were abandoned. *Id.* at 2. Finally, the District Judge ordered Plaintiffs to respond to the Motion to Dismiss. *Id.* at 4. No formal response to the

Motion to Dismiss has been filed and, as noted above, multiple amended complaints have been filed without leave. *See* docs. 13, 16 & 17; *see also generally* docket.

Before reaching any of the other issues, the Court must address the status of claims purportedly asserted on behalf of the Estate of Brenda Swain. *See* doc. 8 at 1. Defendant's Motion to Dismiss those pleadings does not distinguish between the status of the two nominal plaintiffs. *See, e.g.,* doc. 9-1. Despit that treatment, the Court has an independent obligation to determine whether it has subject matter jurisdiction. *See, e.g., Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006). Among the requirements for a federal court to exercise subject matter jurisdiction is "standing." *See, e.g., Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 974-75 (11th Cir. 2005). Frequently, estates may not assert claims through their representatives, proceeding *pro se*. *See, e.g., Iriele v. Griffin*, 65 F.4th 1280, 1285 (11th Cir. 2023) (prohibiting "executors of estates from representing the estate in federal court *pro se* where the estate has additional beneficiaries and/or creditors."). Although attempts by *pro se* parties to represent decedents' estates may also involve curable capacity problems, *see, e.g., Hodge v. Municipality of Dothan, Ala.*, 2024 WL

4295272, at *4 (M.D. Ala. Sept. 4, 2024), Pamela Swain does not even purport to act as a properly appointed "representative," of the estate, but as a beneficiary and, perhaps, not even the sole beneficiary, *see, e.g.,* doc. 1-1 at 3 (noting that "[t]he *children* of Brenda Swain," inherited the subject property (emphasis added)); *see also* docs. 7, 8, 13, 16, 17. "[A]n action must be instituted on behalf of the estate in order for standing—and, with it, subject matter jurisdiction—to be proper." *Hodge,* 2024 WL 4295272, at *4, *4 n. 2. *Cf.* O.C.G.A. §§ 53-1-2(1), (3), (7), (12). Since Pamela Swain does not appear to assert any claims "on behalf of the estate," it appears that the Court lacks subject matter jurisdiction over any purported claim belonging to the Estate of Brenda Swain. Therefore, it must be **DISMISSED**.[1] Fed. R. Civ. P. 12(h)(3).

The next issue that must be addressed is Swain's clear disregard for the Court's orders. In addressing her multiple amended complaints, the District Judge was absolutely clear that the "Plaintiffs will not be allowed to further amend their complaint without first seeking and

[1] As noted above, an individual might be entitled to amend pleadings to establish the propriety of asserting claims on behalf of an estate. Such an opportunity is not warranted here, given Swain's ongoing pattern of disregard for court orders and frivolous filings. Even if there were some allegation that the Estate might be properly represented by a *pro se* party, those issues would give the Court serious concerns about whether Swain, in particular, was a proper representative.

obtaining leave to amend." Doc. 10 at 1. Swain proceeded to file three amended pleadings without leave. Docs. 13, 16 & 17. Because those documents were submitted without leave, in disregard of the Court's Order, and without Defendant's consent, they are void. *See, e.g., Hoover v. Blue Cross & Blue Shield of Ala.*, 855 F.2d 1538, 1544 (11th Cir. 1988) ("In general, if an amendment that cannot be made as of right is served without obtaining the court's leave or the opposing party's consent, it is without legal effect and any new matter it contains will not be considered unless the amendment is resubmitted for the court's approval."). The District Judge also directed Plaintiffs to file a response to the Motion to Dismiss within twenty-one days and stated that, if they did not do so, "the Court will determine that Plaintiffs do not oppose the motion." Doc. 10 at 4. No such response was ever filed. *See generally* docket.

The Federal Rules provide that "[i]f a plaintiff fails to prosecute or to comply with these rules or a court order," an action may be dismissed. Fed. R. Civ. P. 41(b). "A district court may sua sponte dismiss an action under Federal Rule of Civil Procedure 41(b) for the plaintiff's failure to comply with a court order." *Royster v. Darling*, 195 F. App'x 537, 538 (8th Cir. 2006). This Court's Local Rules authorize dismissal for "[w]illful

disobedience or neglect of any order of the Court." S.D. Ga. L. Civ. R. 41.1(b). "The district court's power to dismiss is an inherent aspect of its authority to enforce its orders," *Brown v. Tallahassee Police Dept.*, 205 F. App'x 802, 802 (11th Cir. 2006) (internal quotes and cites omitted), and "[d]ismissal pursuant to Rule 41(b) 'upon disregard of an order, especially where the litigant has been forewarned, generally is not an abuse of discretion.' " *Id.* (quoting *Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989.). Swain's disregard of the District Judge's Order, therefore, justifies dismissal.

Even if Swain had not disregarded the Court's Order, it is clear that Defendant's Motion to Dismiss the Second Amended Complaint, doc. 9, is meritorious and that pleading fails to state any claim upon which relief can be granted. The Second Amended Complaint asserts a claim, based on Plaintiff's "belief," that Defendant "disclosed . . . personal information . . . to outside persons," in violation of the Privacy Act of 1974. *See generally* doc. 8. It refers to a "discovery report," that Plaintiff contends contains "a list of people who inquired about the plaintiff's private mortgage account and the any requests that these people suggested they do to the plaintiffs in order to increase their mortgage, refuse to comply

with the mortgage contract, and any schemes or designs that they 'cooked up' in order to foreclose on the property." *Id.* at 3. It then states "[i]f any breach occurred," plaintiff seeks an additional $2,000,000 in damages. *Id.* at 4. As Defendant points out, the Privacy Act only applies to government agencies. Doc. 9-1 at 6-7; *see also Schwier v. Cox*, 340 F.3d 1284, 1287-88 (11th Cir. 2003). Since there is obviously no basis for any allegation—even assuming there were one, which there is not—that Defendant is such an agency, it is not plausibly subject to liabitly under the Privacy Act. Since the District Judge expressly found that any claims not asserted in the Second Amended Complaint were abandoned and the remaining purported amendments, submitted without leave are void, the failure of the Privacy Act claim resolves this case entirely.

Finally, the Court's analysis of Plaintiff's remaining filings indicates that many of her assertions, including perhaps the vague allegations about financial improprieties in the administration of a mortgage which underlie this case, are frivolous. The Supreme Court has explained that a claim "is frivolous where it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). "[A] finding of factual frivolousness is appropriate when the facts alleged

rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them." *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Although not all of her pleadings are factually frivolous, it is clear that many of them are and indicate the continuation of a pattern of frivolous filings by Swain.

Swain states, in her request for a hearing filed on September 19, 2025, that it "is being submitted to show the evidence of mail malfeasance," allegedly committed by "Stephen Miller of the Trump Administration[, who] is [a] well known criminal to commit illegal stalking," in coordination with "[industrialist] Elon Musk, [United States Secretary of Health and Human Services] RFK[,] Jr[.] and others . . . ." Doc. 20 at 1-2. She has subsequently stated that "[t]here is also some evidence that The Trump Administration is 'coaching' [Defendant] Newrez . . . into committing mortgage fraud . . . ." Doc. 22 at 2. On December 2, 2025, her Motion states that "[t]he Trump team has contacted the plaintiff's work and demanded they fire the plaintiff." Doc. 23 at 2. Moreover, "[t]he people from the Trump Administration who contacted them are [President] Donald Trump, [Director of United States Federal Housing] Bill Pulte, [White House advisor] Stephen Miller (as

well as [former Harvard University Law School professor and media personality] Alan Dershowitz) . . . ." *Id.* at 2. She then filed a document titled "Continued Requested Hearing," that alleges that Defendant is "colluding with the Trump Administration, Wipro, US Post Office and the GADOL to keep the plaintiff out of work and poor to lose the house." Doc. 24 at 1; *see also* doc. 26 at 1. She has referred to "a shadowy figure," near her house and alleged that "Trump administration members have been identified as committing criminal stalking and financial crimes to induce financial failure," that the Defendant is "employing extra rules with payment that their misappropriation and the criminal stalking of the Trump administration caused stalking the plaintiff for sexual favors," and requesting "restraining orders" on President Trump, Stephen Miller, Secretary Pulte, Alan Dershowitz, and incarcerated former media executive Harvey Weinstein. Doc. 28 at 2-3. A subsequent filing adds Katie Miller, a podcaster married to Stephen Miller, to the list of malefactors. Doc. 29 at 2. In February, the allegations of misconduct shifted again, now to include Donald Trump, Jr. and musician Kanye West, with the various administration figures contacting her employers to interfere with her employment. Doc. 32 at 3. Although she states she

has "no idea what is going on here," she suggests the vague allegations are "consistent with Donald Trump and his goons telling people to 'figure out a way' for his 'enemy' to be thrown out on the streets," and that the President has threatened "and continues to stalk," her. *Id.* Most recently she alleges that an unnamed attorney associated with the firm representing Defndant in this case "is an active liaison to Stephen Miller, G Pete Hegseth [sic], and Donald Trump," and that the President and Miller "have withheld the plaintiff's tax return." Doc. 36 at 2. Finally, this Court has previously noted Swain's allegations that "various public figures have engaged in a multi-year conspiracy of harassment." 6:20-cv-082, doc. 8 at 2 (S.D. Ga. Oct. 23, 2020). Plaintiff's filings, therefore, establish an unmistakable pattern.

Courts have recognized that claims arising from alleged conspiracies among politicians and public figures "are facially implausible and subject to dismissal as frivolous." *McIntosh v. Thomaz*, 2019 WL 3804671, at *1 (N.D. Cal. Aug. 13, 2019); *see also, e.g., Tooley v. Napolitano*, 586 F.3d 1006, 1010 (D.C. Cir. 2009) (noting that district courts have dismissed for "patent insubstantiality" claims that "plaintiff was subjected to a campaign of surveillance and harassment deriving

from uncertain origins"); *Grady v. United States Dept. of Defense*, 2017 WL 35531, at *2 (S.D. Fla. Jan. 4, 2017) ("In this action, Plaintiff's allegations of extreme forms of government surveillance and harassment are of the sort of bizarre conspiracy theory that warrant dismissal."); *Fontanez v. Berger*, 2022 WL 3646353, at *8 (D.D.C. Aug. 24, 2022) (finding claims of "a long-running and far-reaching conspiracy, executed between countless entities and individuals, allegedly causing [Plaintiff] many misfortunes . . ." to be frivolous); *Jacubus v. Huerta*, 2013 WL 1723631, at *6 (S.D.W. Va. Apr. 22, 2013) (finding allegations of a governmental surveillance conspiracy to be "the sort of 'delusional,' 'fantastic,' and 'fanciful' claims that warrant dismissal."). Regardless of the alternative grounds to dismiss this case, it is clear that Swain's various motions for hearings are frivolous and are, therefore, **DENIED**. Docs. 19, 20, 21, 22, 23, 26, 28, 29, 31, 32 & 36.

In summary, because there are no grounds establishing the propriety of Pamela Swain's pursuit of claims on behalf of the Estate of Brenda Swain, any claim purportedly asserted on behalf of the Estate should be **DISMISSED** for lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3). Because Swain has disregarded court orders, her case

should be **DISMISSED**. *See, e.g.,* Fed. R. Civ. P. 41(b). Alternatively, Defendant's Motion to Dismiss her Second Amended Complaint should be **GRANTED**. Doc. 9. Because that pleading is the operative pleading in this case, the case as a whole should be **DISMISSED**. Since there is no viable claim asserted, Swain's Motion for Preliminary Injunction should be **DISMISSED** as moot. Doc. 25. Finally, her various requests for hearings and other relief are **DENIED** as frivolous. Docs. 19, 20, 21, 22, 23, 26, 28, 29, 31, 32 & 36.

This R&R is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3. Within 14 days of service, any party may file written objections to the R&R with the Court and serve a copy on all parties. The document should be captioned "Objections to Magistrate Judge's Report and Recommendations."

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge. The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to timely file objections will result in the waiver of

rights on appeal. 11th Cir. R. 3-1; *see Symonette v. V.A. Leasing Corp.*, 648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. United States*, 612 F. App'x 542, 545 (11th Cir. 2015).

**SO ORDERED AND REPORTED AND RECOMMENDED,** this 6th day of March, 2026.

CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA